PEOPLE v TESEN

Docket No. 275401. Submitted May 2, 2007, at Lansing. Decided June 26, 2007, at 9:10 a.m. Leave to appeal denied, 480 Mich ___.

Daniel S. Tesen was charged in the Livingston Circuit Court with various crimes relating to the alleged sexual assault of his 12-year-old son. The defendant filed a motion to disqualify Assistant Prosecuting Attorney Daniel Rose from representing the people, arguing that Rose had conducted a forensic interview of the victim before Rose authorized the warrant charging the defendant with the crimes and that the defendant intended to call Rose as a witness at the trial. The court, David J. Reader, J., granted the motion and entered an order disqualifying Rose from representing the people in the matter. The prosecution sought leave to appeal, and the Court of Appeals, DAVIS, P.J., and OWENS, J. (METER, J., dissenting), denied the application in an unpublished order, entered November 29, 2006 (Docket No. 273484). The Supreme Court, in lieu of granting the prosecution's application for leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 477 Mich 980 (2007).

The Court of Appeals *held*:

1. The disqualification order was not clearly erroneous because Rose had assumed a lead role in investigating the case and, therefore, was likely to be a necessary witness at trial.

2. The issue of Rose's disqualification in the trial had not been decided before the circuit court ruled that Rose was disqualified. The district court's rulings with regard to the matter were not intended to decide whether Rose could participate in proceedings outside the jurisdiction of the district court.

Affirmed.

TRIAL — WITNESSES — ATTORNEY WITNESSES.

A party seeking disqualification of an attorney representing the opposing party on the basis that the attorney is a necessary witness bears the burden of showing that the attorney is a necessary witness; an attorney is not a necessary witness if the substance of his or her testimony can be elicited from other

> witnesses and the party seeking disqualification did not previously state an intent to call the attorney as a witness.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David L. Morse*, Prosecuting Attorney, and *William J. Vailliencourt, Jr.*, Assistant Prosecuting Attorney, for the people.

*Gatesman and Spickard, P.L.C.* (by *Mack T. Spickard*), for the defendant.

Before: MARKEY, P.J., and SAWYER and BANDSTRA, JJ.

PER CURIAM. On remand from the Supreme Court for consideration as on leave granted,[1] the Livingston County Prosecuting Attorney appeals from an order of the trial court that disqualified an assistant prosecutor from trying this criminal case. We conclude that, because that prosecutor had assumed a lead role in investigating the case and, therefore, was likely to be a necessary witness at trial, the disqualification order was not clearly erroneous, and we affirm.

### BACKGROUND FACTS

On May 24, 2006, a criminal and child protective services investigation was initiated on the basis of a complaint that defendant had sexually assaulted his 12-year-old son. In accordance with the Livingston County Protocol for Investigation of Child Abuse (Protocol), the investigating officer did not extensively interview the child. Instead, he reported the matter to the Livingston Area Council Against Spouse Abuse (LACASA), a nonprofit organization that works with victims of domestic violence, sexual assault, and child abuse, for a forensic interview by team members of the

---

[1] See *People v Tesen*, 477 Mich 980 (2007).

CARE (Child Abuse Response Effort) Project. A CARE interview is a coordinated, multidisciplinary, team-based interview used in investigations of child abuse or neglect. The goal of this forensic interview is to obtain a statement from a child in a developmentally sensitive, unbiased, and truth-seeking manner, that will support accurate and fair decision-making in the criminal justice and child welfare systems.

On May 25, 2006, defendant's son was interviewed by one of the CARE team members, Assistant Prosecuting Attorney Daniel Rose, with five other team members observing all or a portion of the interview. The next day, Rose authorized the warrant charging defendant with 14 counts of first-degree criminal sexual conduct, two counts of disseminating obscene material to a minor, one count of third-degree child abuse, and one count of truancy for failing to send his son to school. Rose was assigned to prosecute the case.

Before the preliminary examination, defendant moved in the district court to disqualify Rose from the case, asserting that as a result of his lead role in interviewing the victim, Rose is a "material witness" who the defense "reasonably intends to call . . . as a witness at the preliminary examination, and possibly at trial." Defendant argued that Rose's testimony would relate "to highly contested facts that form the basis of the criminal charges" and that the prosecution would suffer no hardship by assigning a different prosecutor to the case. The prosecution filed a response asserting that Rose was not a necessary witness.

Testimony at an evidentiary hearing on the matter established that Rose conducted the interview at LACASA's offices and that it was observed in its entirety or in part by five other persons. Only Rose and the victim were in the interview room; the observers

viewed the interview through a one-way mirror from an adjacent room. The witnesses' testimonies regarding the length of the interview varied from one hour to less than two hours.

Michalyea Subjeck, an employee of the Department of Human Services, testified that she observed the entire interview. Her role was to take notes so that a report could be prepared, and to that end she generated 12 pages of handwritten notes. Her notes focused on the child's responses to questions; she did not write down a list of the questions asked by Rose. Elizabeth Stahl, program director for LACASA, testified that her duties are to coordinate and attend all CARE Project interviews. Stahl was present for all but about 10 minutes of the interview and also took notes. Chris Roselle, a LACASA legal advocate, observed the last half of the interview, but she did not take notes.

Livingston County Sheriff's Department Detective Gary Childers testified that the CARE Project team members, including himself and Detective James McGinty, held a preinterview meeting during which "it was agreed that Mr. Rose would conduct the interview" and that he (Detective Childers) would take notes and prepare a police report. Detective Childers testified that he observed the entire interview. After preparing his police report, he shredded his interview notes, as is his normal practice. Similarly, Detective James McGinty testified that he was the lead officer in the case but assigned Detective Childers to cover the interview. Detective McGinty observed the entire interview except for about one minute when he left to take a phone call. He did not take notes and did not prepare a police report.[2]

---

[2] According to the Protocol, a CARE Project interview of a suspected child abuse victim must be videotaped. Videotaping is also required under

At the conclusion of the hearing, the district court denied the motion to disqualify Rose, reasoning that there was no caselaw distinguishing between a prosecutor as an investigator and as an interviewer and that, while it was "dangerous" to "confuse the roles," it was important for a prosecutor to be present when a child abuse victim is interviewed. The court expressed its concerns as follows:

> I think this is very dangerous. I think it's like going—a prosecutor doing its [sic] own investigation. I find it difficult to believe that if a prosecutor was the only witness to an incident that, that he could continue as a prosecutor, because he, of course, would become the key witness to a case. You can't confuse the roles. On the other hand, I also understand that a prosecutor must determine what charges to issue; and that's the purpose of the CARE Project. But it was always my understanding from the CARE Project that that's what the people from LACASA were trained to do. And that's to question these witnesses, and that the prosecutor could be there if they [sic] wanted to offer any legal advice, which is part of the protocol; or ask any questions. For some reason, that method was not used. However, I don't think that it creates such an issue that Mr. Rose has to be disqualified. I do believe that he was dangerously close to being disqualified because there wasn't any person who was there, and he could say—or people testify, "Oh, I was gone for one minute". But that's one minute. Who knows if it was one minute, three minutes, five minutes? Again, there're no witnesses to that. Not even the officer in charge can remember everybody who was there, except that officer in charge and Detective Childers. So there are questions about that, but I submit that if Detective Gary Childers was not there for the entire interview and could not be reached as a witness, then Mr. Dan Rose has placed himself in a witness position.

state protocols applicable to this type of forensic investigation. The interview was not recorded on audio- or videotape.

But based upon all the facts and the case law, I'm going to deny the defense motion at that [sic] time.

A preliminary examination was held and defendant was bound over on all the charges. Thereafter, defendant filed a motion in the circuit court to disqualify Rose, arguing grounds similar to those he argued in the district court, but not indicating that the district court had ruled on the issue. The prosecutor opposed the motion, arguing that the issue was res judicata and, if not res judicata, that defendant had failed to demonstrate that Rose was a necessary witness in the case.

At a hearing, the circuit court inquired of defense counsel whether formal charges had been filed at the time of the victim's interview. Counsel responded that charges had not been filed and that Rose's lead role in the investigation—as opposed to preparation for trial by interviewing a complainant—led him to "cross[] the line and bec[o]me essentially a law enforcement officer at that time, a fact gatherer, and it will hamstring the defense if he is allowed to continue in the prosecution of this case." Defense counsel specifically argued that he would not be able to cross-examine the interviewer regarding his qualifications or whether the Protocol was followed, and that the jury's knowledge that Rose conducted the interview would place the defense at an "unfair disadvantage."

After listening to the arguments of counsel, the court ruled as follows:

> *The Court*: This is a capital case, and there's certainly a balancing of interest that I have to do. From my review, I believe that given the lack of the videotaping, the initial contact being made by the Prosecutor in this case, that it is appropriate to grant the—the motion. And on that basis, I'm going to disqualify Mr. Rose from prosecuting the case.
>
> *Mr. Spickard [defense counsel]*: (inaudible), Your Honor.

> *Mr. Rose*: Implied in the Court's decision are you ruling that this matter is not res judicata or collateral estoppel?
>
> *The Court*: I've made my ruling, Mr. Rose.

The court entered an order granting the disqualification motion, from which the prosecutor appeals.

### ANALYSIS

As a preliminary matter, the prosecution argues that the circuit court erred by reviewing de novo the district court's decision to deny defendant's disqualification motion because defendant was barred by res judicata from relitigating this issue.[3] Alternatively, the prosecution contends that the circuit court erred in reviewing the issue because defendant did not appeal the district court's decision to the circuit court. We need not consider whether the principles of res judicata or appellate jurisdiction upon which the prosecution relies could ever apply in a case like this because, under the facts presented, the circuit court did not reconsider the question addressed by the district court.

Defendant moved in the district court to disqualify Rose from representing the people at the preliminary examination, noting that he reasonably intended to call Rose to testify at the preliminary examination. The district court never entered a written order that would definitively show that its decision to deny defendant's motion was limited to Rose's participation in the preliminary examination. However, the district court stated on the record that an evidentiary hearing would be scheduled "so that Mr. Rose knows whether or not he becomes a witness or continues as a Prosecutor in this matter for the preliminary exam." On the basis of

---

[3] All aspects of the issues the prosecution raises are preserved for appeal.

defendant's motion and the district court's statement, we conclude that the district court did not intend to decide whether Rose could participate in proceedings outside the jurisdiction of the district court. See MCL 600.8311(d) (district courts are courts of limited jurisdiction, which includes jurisdiction over preliminary examinations in felony cases). Thus, the issue of Rose's participation in the criminal trial had not been decided before the circuit court ruled that Rose was disqualified from that participation.

Turning to the substantive question presented, the prosecution argues that the circuit court erred by concluding that Rose is a necessary witness and by disqualifying him. The prosecution contends that there are other witnesses who can testify regarding the same matters about which Rose would be called to testify; Rose interviewed the victim in the full view of five other people, all of whom are available to testify. Thus, the prosecution argues that defendant did not show a compelling and legitimate need to call Rose as a necessary witness at trial. Again, we disagree.

The trial court's findings of fact in regard to a motion for disqualification of counsel are reviewed for clear error. *Buchanan v Flint City Council,* 231 Mich App 536, 547; 586 NW2d 573 (1998). However, this Court reviews de novo the trial court's application of the relevant law to the facts. *Brandon Charter Twp v Tippett,* 241 Mich App 417, 421 n 1; 616 NW2d 243 (2000). Further, the application of "ethical norms" to a decision whether to disqualify counsel is also reviewed de novo. *Rymal v Baergen,* 262 Mich App 274, 317; 686 NW2d 241 (2004)

We first note that the question raised is one of first impression. No reported Michigan court decision (or unpublished appellate decision) has determined

whether a prosecutor should be disqualified from trying a felony child sexual abuse case because he or she took a lead role in the criminal investigation by conducting the forensic interview of the victim.

We begin our analysis by noting the difference between the role of a prosecutor, who is an advocate, and that of the police and other investigators, who gather evidence. Generally, it is recognized that the prosecutor's job is to evaluate the evidence provided by investigators and determine whether to prosecute a crime. See, e.g., *Buckley v Fitzsimmons*, 509 US 259, 273; 113 S Ct 2606; 125 L Ed 2d 209 (1993).

A prosecutor is both an administrator of justice and an advocate whose duty is to seek justice, not merely to convict. ABA Standards for Criminal Justice, Prosecution Function Standards (3rd ed), 3-1.2. See also MRPC 3.8, outlining the special responsibilities of a prosecutor. Certainly, a prosecutor may properly conduct interviews of prospective witnesses, including a victim, but such interviews generally occur after the police have completed an initial investigation and a criminal prosecution has been initiated. Even in those latter situations, the ABA Standards for Criminal Justice provide that a prosecutor should conduct interviews of a prospective witness in the presence of a third person unless the prosecutor "is prepared to forgo impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present the impeaching testimony . . . ." ABA Standards for Criminal Justice, *supra*, 3-3.1(g), including commentary.

Similarly, the Michigan Rules of Professional Conduct prohibit attorneys from acting as advocates at trials where they are likely to be necessary witnesses. MRPC 3.7 provides, in relevant part:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Michigan courts have observed that the purpose of the rule is to prevent any problems that would arise from a lawyer's having to argue the credibility and the effect of his or her own testimony, to prevent prejudice to the opposing party that might arise therefrom, and to prevent prejudice to the client if the lawyer is called as an adverse witness, not to permit the opposing party to seek disqualification as a tactical device to gain an advantage. *Smith v Arc-Mation, Inc*, 402 Mich 115, 119; 261 NW2d 713 (1978); *Kubiak v Hurr*, 143 Mich App 465, 471, 475; 372 NW2d 341 (1985).

More recently, this Court in *People v Holtzman*, 234 Mich App 166, 186; 593 NW2d 617 (1999), observed that the rule is "especially salient in criminal cases" and acknowledged *United States v Birdman*, 602 F2d 547, 553-554 (CA 3, 1979), in which the court offered four reasons why our justice system would be undermined if prosecutors could serve the dual roles of trial advocate and witness: (1) the risk that a prosecutor would not be a fully objective witness, (2) the prosecutor's position may artificially enhance his or her credibility, (3) jurors might fail to differentiate between the prosecutor's testimony and his or her arguments, and treat the latter as evidence, and (4) public confidence in the administration of justice could be undermined. Also, the comment to MRPC 3.7 provides, in relevant part:

The opposing party may properly object where the combination of roles may prejudice that party's rights in

the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

The party seeking disqualification in such a situation bears the burden of showing that the attorney is a necessary witness. *In re Susser Estate*, 254 Mich App 232, 237-238; 657 NW2d 147 (2002). While there is no Michigan case explicitly defining the term "necessary witness," both the Michigan Supreme Court and this Court have found that attorneys are not necessary witnesses if the substance of their testimony can be elicited from other witnesses and the party seeking disqualification did not previously state an intent to call the attorney as a witness. *Smith, supra* at 119; *In re Susser Estate, supra* at 237-238. The prosecution argues that Rose is not a necessary witness because the substance of his testimony can be elicited from the five other people who observed the interview.

However, as defendant notes, the observers cannot testify regarding Rose's qualifications to conduct the interview, whether he has received training in the forensic interview Protocol, how many forensic interviews he has conducted, and how and why he developed the questions and hypotheses that he used during the interview. These questions are important because the Protocol for interviewing child victims is very specific and detailed to address the difficulties that may be encountered when interviewing children. The questions would clearly be of some value to a fact-finder trying to determine the weight and credibility of the victim's account of the charged offenses. Rose may well have other personal knowledge of information relevant to contested issues, and, again, much of that personal knowledge cannot be discovered through the observers'

testimonies. Also, defendant clearly stated in his circuit court motion for disqualification an intent to call Rose as a witness, and the prosecution does not claim any hardship if Rose's disqualification requires that another prosecutor be assigned to handle the trial. Finally, we note that the circuit court was probably, cautiously and appropriately, trying to stave off a mistrial in the event that, in the middle of trial, it became more obvious that Rose was a necessary witness.

We do not conclude that the circuit court's disqualification of Rose was clear error. We affirm.