**ALEYNU, INC., Plaintiff,**

v.

**UNIVERSAL PROPERTY DEVELOP-MENT AND ACQUISITION COR-PORATION, Defendant.**

No. 07–11707.

United States District Court,
E.D. Michigan,
Southern Division.

June 30, 2008.

Aleynu, Incorporated, pro se.

Homayune A. Ghaussi, Sarah C. Lindsey, Warner, Norcross, Southfield, MI, for Defendant.

## OPINION AND ORDER DENYING RECONSIDERATION OF ORDER DISQUALIFYING COUNSEL

DAVID M. LAWSON, District Judge.

On October 26, 2007, the Court entered an order disqualifying attorneys Scott Smith and Jack Wolfe and the Smith and Wolfe PLLC law firm from representing the plaintiff in this matter. The order was entered after a hearing in which Mr. Smith acknowledged on the record that Mr. Wolfe had "severe conflict" of interest and Mr. Smith himself did not "feel comfortable proceeding" as the attorney for the plaintiff. Apparently, Messrs. Wolfe and Smith have changed their minds, for they have filed a motion to reconsider the disqualification order, contending that Michigan Rule of Professional Conduct (MRPC) 3.7 does not require the disqualification. The Court ordered a response from the defendant. After reviewing the matter, the Court tends to agree that Rule 3.7 itself does not mandate disqualification of Mr. Smith. However, the Court remains convinced that Messrs. Wolfe and Smith should not serve as attorneys for the plaintiff in this case because there remains a serious conflict of interest between Mr. Wolfe's interest and the plaintiff, and Mr. Smith agreed to the disqualification during the hearing. Therefore, the motion for reconsideration will be denied.

## I.

The case appears to involve a straightforward collection of money owed on a delinquent promissory note and guarantee. According to the complaint, Aleynu, Inc. loaned $330,000 on November 1, 2004, which was to be repaid with interest on November 30, 2004. The loan is memorialized by a promissory note and guarantee. The complications arise when one learns that the borrower is Jack B. Wolfe, the attorney for the *plaintiff,* and his wife, Charlene K. Wolfe; and the guarantors are Loan Giant Bridge Loan, LLC and World Wide Financial Services, Inc., of which Mr. Wolfe is the manager and chief

executive officer, respectively, and on whose behalf Mr. Wolfe signed the guarantee. The note is also guaranteed by Pro-Core Group, Inc., the former name of the defendant in this case, and was signed by George Csatary, who the defendant alleges has a personal relationship with Mr. Wolfe.

Although as the attorney for the plaintiff, Mr. Wolfe apparently chose not to sue himself and his wife or the companies he controls, he is attempting to collect on his client's behalf the money he himself failed to repay. The Court pointed out this rather obvious conflict of interest at a hearing on October 25, 2007 originally scheduled on a motion to dismiss filed by the defendant. It appears that Mr. Wolfe decided that it would be imprudent to argue that motion himself, so attorney Scott Smith, Mr. Wolfe's law partner, was belatedly pressed into service.

Mr. Wolfe is a member of Smith & Wolfe, PLLC, as is attorney Scott Smith. However, according to Mr. Wolfe, he and Mr. Smith are not really partners in any meaningful sense. At the hearing, Wolfe stated:

> Your Honor, the only cases that Scott Smith and I have ever worked on is the case that you heard this morning with Karate Institute. We are two individuals who practice law. We—we look to one another for support and advice with regard to the cases we're handling, and if a situation arises in which one of us cannot be in two places at one time and another can cover, then we do so, but in terms of, do we have an account in which fees are placed into that account associated to the law firm Smith and Wolfe, yes, that we do, but we also have fees that are written directly to Jack Wolfe, Attorney At Law, and fees that are written directly to Scott Smith Attorney At Law. To call me a partner, I think, is a stretch under the laws of the State of Michigan. Are we members of Smith and Wolfe, PLLC? Yes, we are. Are we managers of Smith and Wolfe, PLLC? Yes, we are. But in terms of practicing attorneys, I don't work on his caseload, he doesn't work on my caseload.

Hrg. Tr. 8–9 (Oct. 25, 2007).

This case began on April 17, 2007, when Mr. Wolfe filed a complaint on behalf of Aleynu. The defendant filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim, to which the plaintiff responded. Mr. Smith signed the response, which was e-filed by Mr. Wolfe, and included a three-page affidavit by Mr. Wolfe, where he attempts to provide facts sufficient to defeat the plaintiff's motion for dismissal for lack of personal jurisdiction.

As noted above, both Mr. Smith and Mr. Wolfe were present at the hearing October 25, 2007 on the motion. Early in the hearing, Mr. Smith stated that "Mr. Wolfe is not going to argue the motion or be involved in the case from this time on, since it might—it might be improper." Tr. 5–6. Mr. Smith stated that he was not originally involved in the case, until "Mr. Wolfe realized that he had a severe conflict." *Id.* at 6. Although it appears that Mr. Smith signed the response to the motion, he stated on the record that he was brought into the case only a few hours prior to the hearing. *Id.* at 8.

The Court stated that it was "uncomfortable proceeding under the circumstances and that discomfiture should be severalfold on [Mr. Smith's] part, and certainly on [Mr. Wolfe's] part." *Id.* at 8. Mr. Smith then stated:

> I share your discomfort after reading the rule and I think it's improper for us to proceed. What I would suggest, and I, you know, apologize to Counsel here, is that we be given a very short time to

find someone to replace us. A lot of the work is done, but I think you're—we can certainly—you know, I have to say, I don't know if there is any real conflict here, but the appearance of impropriety is enough to—that I think, you know—and I think the Court has pointed it out and we apologize for not focusing on it. Actually, I did bring it up that it could be a problem, but I—in the rush of everything, I didn't research it and no one else raised it, but I—I share your—I don't feel comfortable proceeding.

Tr. 9–10. The Court then ordered that Mr. Smith, Mr. Wolfe, and Smith & Wolfe, PLLC be disqualified and gave the plaintiff fifteen days to find another attorney.

Some time thereafter, Messrs. Wolfe and Smith filed the present motion for reconsideration. In support, they submitted an affidavit signed by Rabbi Alon Tolwin, director of Aleynu, Inc. Babbi Tolwin states, "Any potential conflict of interest which Jack B. Wolfe, Esq., Scott F. Smith, Esq. and/or Smith & Wolfe, PLLC … may have in this matter is waived by me on behalf of my organization." Aff. of Alon Tolwin [dkt. # 18] ¶ 3. He continues:

I have been fully informed and advised by my Attorneys as to any and all potential conflicts that may arise in this matter, especially the fact the [sic] Mr. Wolfe will likely be called as a witness in this case as he was the obligor of the note that Aleynu is suing on and was the individual that spear-headed the entire transaction. In addition, I am fully aware of and have been informed of the recently settled case of the Karate Institute, Inc. ("KI") and the potential conflict that may arise in that a recovery for KI against the defendant may be in lieu of a recovery by Aleynu which could benefit Mr. Wolfe and/or his ex-partners in World Wide Financial Services, Inc.

*Id.* at ¶ 4. He states that Smith and Wolfe "agreed to assist us in the prosecution of this matter at a reduced fee based upon the charitable nature of our organization." *Id.* at ¶ 5. He claims that "Disqualification of the Attorneys will cause substantial hardship for Aleynu. The Attorneys, most specifically Mr. Wolfe, understand this case at a depth that would require over 100 hours from any other substitute counsel." *Id.* at ¶ 6.

Messrs. Wolfe and Smith argue, therefore, that they should not be disqualified under MRPC 3.7 because the rule speaks to lawyer's acting at trial, not during pretrial proceedings. They cite several advisory, non-binding State Bar of Michigan Ethics Opinions that emphasize that the Rule only disqualifies counsel at trial, not from pretrial proceedings. They note that although Mr. Wolfe cannot act as trial counsel, Mr. Smith can because the rule contains an exception for members of the attorney's law firm. Further, disqualifying Smith and Wolfe would work a substantial hardship on their client, they say, because it is a "charitable organization" and the present lawyers are well-versed in the facts. They concede that Mr. Wolfe will be a necessary witness in the trial of the case.

The defendant emphasizes that Mr. Wolfe's testimony would relate to a contested issue. The defendant also argues that it is unlikely that there is a substantial hardship on the plaintiff, because this case is still at the pleadings stage, and the factual investigation has not fully begun, so substitution of attorneys would be unproblematic. The defendant states that the reduced fee that the plaintiff is receiving is more a symptom of Mr. Wolfe's conflict, rather than based on the charitable nature of the organization; the organization's ability to loan $330,000 suggests that it does not lack financial resources.

## II.

■ Motions for reconsideration may be granted pursuant to Local Rule 7.1(g) when the moving party shows (1) a "palpable defect," (2) that misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Mich. Dep't of Treasury v. Michalec*, 181 F.Supp.2d 731, 734 (E.D.Mich.2002) (citations omitted). "Generally ... the court will not grant motions for ... reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(g)(3).

■ The Court originally believed that the plaintiff's lawyers should be disqualified under MRPC 3.7, which provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." MRPC 3.7(a). Courts have the inherent authority to prevent individuals from practicing before it. *D.H. Overmyer Co., Inc. v. Robson*, 750 F.2d 31, 33 (6th Cir.1984). "The power is one which ought to be exercised with great caution, but which is, we think, incidental to all Courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824) (Marshall, C.J.).

■ "Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice." *Manning v. Waring, Cox, James, Sklar and Allen*, 849 F.2d 222, 224 (6th Cir.1988). "A court should only disqualify an attorney 'when there is a rea-sonable possibility that some specifically identifiable impropriety actually occurred.'" *Moses v. Sterling Commerce (America), Inc.*, 122 Fed.Appx. 177, 184 (6th Cir.2005) (quoting *Kitchen v. Aristech Chem.*, 769 F.Supp. 254, 257 (S.D.Ohio 1991)). In determining whether disqualification ought to occur, the Court must account for "'the traditional concerns of the legal profession that client confidences be protected and that appearances of professional impropriety be avoided.'" *DeBiasi v. Charter County of Wayne*, 284 F.Supp.2d 760, 770–71 (E.D.Mich.2003) (quoting *Manning v. Waring, Cox, James Sklar and Allen*, 849 F.2d 222, 225 (6th Cir.1988)). A state's ethics rules are appropriate standards against which to measure to propriety of an attorney's conduct for the purpose of determining whether a lawyer should be disqualified in a particular case. *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc.*, 466 F.3d 456, 458 (6th Cir.2006), *vacated on other grounds*, 472 F.3d 436 (6th Cir. 2007) (citing *Evans & Luptak, PLC v. Lizza*, 251 Mich.App. 187, 650 N.W.2d 364, 368–69 (2002)).

The text of MRPC 3.7 reads:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

█ "MRPC 3.7(a) seeks to prevent the mixing of advocacy and testimony." *Informal Opinion 281* (Sept.1996).

"[T]he purpose of the rule is to prevent any problems that would arise from a lawyer's having to argue the credibility and the effect of his or her own testimony, to prevent prejudice to the opposing party that might arise therefrom, and to prevent prejudice to the client if the lawyer is called as an adverse witness, not to permit the opposing party to seek disqualification as a tactical device to gain an advantage."

*People v. Tesen*, 276 Mich.App. 134, 143, 739 N.W.2d 689, 694 (2007). "[A]ttorneys are not necessary witnesses if the substance of their testimony can be elicited from other witnesses and the party seeking disqualification did not previously state an intent to call the attorney as a witness." *Id.* at 144, 739 N.W.2d at 695. When another lawyer is capable of representation, and has been involved with the case a long time, disqualification of the lawyer-witness does not work a substantial hardship on the client. *Waltzer v. Transidyne General Corp.*, 697 F.2d 130, 135 n. 3 (6th Cir.1983) (applying Michigan law). Attorneys may handle pretrial matters, "but should plan for the disqualification prospect and take appropriate action." *Informal Opinion 281* (Sept.1996). Representation must be informed of the potential disqualification, consent to it, and the attorney's representation must be otherwise consistent with the conflict of interest rules. *Ibid.*

The informal ethics opinion also notes that subparagraph (b) of Rule 3.7 "ameliorates the harshness of disqualification by making it plain that the disqualification is personal, so that another lawyer from the law firm can step in without facing imputed disqualification." *Informal Opinion 281.* The interest sought by the rule is to protect the opposing party by preventing counsel "from arguing that the lawyer's own testimony ought to be believed, and making the disqualification purely personal strips the possibility of some of its potential for abuse." *Ibid.* If a lawyer would be testifying "adverse to the client," then the entire firm should be disqualified, and this conflict is not waivable. *Informal Opinion 21* (May 1989).

█ In this case, the credibility of Mr. Wolfe is an immediate issue since he has filed a factual affidavit in an effort to defeat the defendant's motion to dismiss. Although it is quite obvious that Mr. Wolfe cannot act as an attorney at trial, the Court believes he also must be prohibited from acting as counsel on pretrial matters. His extensive involvement with all parties on both sides of the lawsuit renders intolerable the likelihood that he will slip into and out of his roles as advocate and fact witness, which will undermine the detached professionalism that is required by members of the Bar. That he cannot appreciate the potential pitfalls of his dual role itself is disconcerting, but it serves to emphasize the wisdom of requiring his disqualification in the present matter, despite the protestations by the plaintiff that it will lose the benefit of Mr. Wolfe's discounted fee.

█ The plain terms of Rule 3.7(b), however, do not require the disqualification of Mr. Smith. Nonetheless, before that conclusion can be reached with certainty, the Court must examine the conflict-of-interest provisions in Rules 1.7 and 1.10.

The movants do not address directly whether there is a conflict of interest relating to Mr. Wolfe's representation. The defendant contends that Smith and Wolfe should both be disqualified because there is a conflict of interest between Mr. Wolfe's interest and the plaintiff. The defendant reasons that Wolfe's own interests

are controlling this litigation because of his $330,000 obligation (which he shares with his wife). The defendant maintains that Mr. Wolfe can only obtain a waiver of the conflict if he "reasonably believes" that his representation will not be adversely affected, which cannot be the case here. Mr. Wolfe's (and his wife's) potential personal liability precludes him from giving detached advice, the defendant insists.

A court may disqualify an attorney for possessing a conflict of interest. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.,* 472 F.3d 436, 437 (6th Cir.2007). Rule 1.7 of the Michigan Rules of Professional Conduct provide that:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation.

Rule 1.7. The comments note "If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Comment to Rule 1.7.

Moreover, a conflict of interest may arise when the lawyer must testify at a trial. If the lawyer's testimony will be adverse to the client's interest, then a conflict arises that extends to the lawyer's firm, and is not waivable. Informal Opinion 281. The mere act of accepting representation knowing that the lawyer will not be able to advocate at trial can constitute a conflict of interest. *Ibid.; see also* Informal Opinion 289 (Feb.1997) (a lawyer can reasonably believe his interest will not be adversely affected when he is suing a mu-

nicipality and his spouse is elected to the city commission); Informal Opinion 251 (Mar.1996) (an attorney who participates in voluntary highway cleanup does not materially limit his representation of criminal defendants who may be sentenced to community service where they may have to clean the same stretch of highway). Moreover, when an attorney has a financial interest in the litigation, a non-waivable conflict of interest arises. Informal Opinion 231 (Mar.1995) (attorney who has a financial interest in sending the client to a particular expert witness based on a fee arrangement has a non-waivable conflict).

When a conflict of interest arises as to a member of the law firm, the rules require disqualification of the firm: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule[ ] 1.7. . . ." MRPC 1.10(a); *see also National Union Fire Ins. Co.,* 472 F.3d at 438. The comments to the rules make the following observation about the definition of "firm":

> For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the rules.

Comment to MRPC 1.10.

The Michigan Rules of Professional Conduct also categorically prohibit specific types of conflicts of interest. Rule 1.8(j) states that "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client," except to secure an attorney's lien or in the case of approved contingent fee agreements. This

provision codifies the common law relating to champerty and maintenance. Comment to Rule 1.8(j). On the similarly worded ABA model rule, the ABA opines, "The modern rationale for the rule is the concern that a lawyer acquiring less than all of a client's cause of action creates so severe a conflict between the lawyer's interest and the client's interest that it is nonconsentable." ABA Formal Opinion 00–418 (July 2000).

The issue of a conflict of interest was not directly addressed in the Court's prior order. However, there is plainly a conflict of interest here. Since the client appears to have consented to the conflict of interest, the question becomes whether Mr. Wolfe "reasonably believes the representation will not be adversely affected." It is virtually certain that Mr. Wolfe's trial testimony will support his client. However, Mr. Wolfe could be placed in a situation where he must challenge the enforceability of the promissory note to save him and his wife from exposure to a $300,000 liability. Mr. Wolfe himself alleges that he has declared bankruptcy; but the protections of bankruptcy are not absolute, and the record does not show that Mr. Wolfe's debt has been discharged already. Nor does the record show that Mr. Wolfe's wife is seeking bankruptcy. Therefore, Mr. Wolfe still has an interest in voiding the note, which is inconsistent with his representation of the plaintiff. This sort of conflict cannot be waived because Wolfe cannot reasonably believe that his (and perhaps his wife's) considerable financial interest relating to the note will not affect his representation.

Mr. Smith and the law firm are disqualified by operation of Rule 1.10(a) and, perhaps more pointedly, by Mr. Smith's candid assessment at the hearing where he acknowledged his discomfiture with proceeding in light of the deep involvement of his law partner in the disputed transactions. Mr. Smith agreed to disqualify himself and Mr. Wolfe during the hearing, so it is, perhaps, unusual that they would seek reconsideration of the Court's order. The Court believes that Mr. Smith should adhere to his first instinct, and that the rules of propriety and professional conduct require disqualification.

## III.

The Court finds no palpable defect in the order of disqualification by which the court and the parties were misled, or that a different disposition of the case is required.

Accordingly, it is **ORDERED** that Scott Smith's and Jack Wolfe's motion for reconsideration of the order disqualifying them from representing any party in this matter [dkt # 16] is **DENIED**.

It is further **ORDERED** that the plaintiff shall have until **August 4, 2008** to retain substitute counsel, who shall file an appearance and respond to the defendant's motion to dismiss by then, if counsel chooses. If no response is received by that date, the Court will proceed to decide the motion to dismiss on the motion papers submitted.