*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREAT DAY REAL ESTATE, LLC,

Plaintiff-Appellant,

v

ASJJ HOTEL MANAGEMENT, INC., and
RIVERVIEW HOSPITALITY, LLC,

Defendants-Appellees.

UNPUBLISHED
March 13, 2026
2:14 PM

No. 369575
Berrien Circuit Court
LC No. 2021-000018-CB

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Plaintiff, Great Day Real Estate, LLC, filed a commercial real estate broker's lien on certain real property pursuant to the Commercial Real Estate Broker's Lien Act (CREBLA), MCL 570.581 *et seq.*, then filed this action seeking to foreclose on that lien. Plaintiff's lien named defendant ASJJ Hotel Management, Inc. (ASJJ Management) as the "owner" of the property on which plaintiff sought to foreclose, but the record owner of the property was ASJJ Hotel Properties (ASJJ Properties)—a separate corporate entity. The trial court held that a commercial real estate broker's lien filed under the CREBLA must name the "record owner" of the property, so the lien on which plaintiff was attempting to foreclose—which did not name the "record owner" of the property—was void and unenforceable, and plaintiff's claim premised on that lien must be dismissed. This was error. The relevant subsection of the CREBLA requires that a commercial real estate broker's lien contain "[t]he name of the owner of the commercial real estate," MCL 570.584(9)(b), in contrast to other sections of the act that apply to the narrower "owner of record." See, e.g., MCL 570.590 and MCL 570.591. While ASJJ Management is not the owner of record of the commercial real estate at issue, the trial court never addressed whether ASJJ Management is otherwise an owner of that real estate. We therefore vacate the trial court's order to the extent that it dismissed plaintiff's foreclosure claim and struck plaintiff's lien, affirm the order in all other respects, and remand this case for further proceedings.

# I. BACKGROUND

On May 23, 2018, plaintiff entered into an agreement with ASJJ Management in which ASJJ Management effectively agreed that, if plaintiff found a buyer for the "Silver Beach Hotel" (the hotel property), then the "seller" would pay plaintiff a finder's fee equal to 2% of the selling price. Ramzi Fakhouri—the owner of ASJJ Management—signed the agreement on behalf of ASJJ Management, and Nidal Haddad signed the agreement on plaintiff's behalf. The agreement did not identify the owner of the hotel property, and the record owner at the time was not ASJJ Management but ASJJ Properties, a separate legal entity owned by Fakhouri.

Plaintiff alleges that it found a prospective buyer for the hotel property, and that buyer formed Riverview, which then entered into a land contract to purchase the hotel property. This land contract referred to ASJJ Management and ASJJ Properties collectively as "Seller," and represented that "Seller has title to the Property, free and clear of any judgments, liens, or other encumbrances." A version of this contract was allegedly executed on November 18, 2020. On December 2, 2020, a "memorandum of land contract" for the hotel property was recorded with the Berrien County Register of Deeds. This memorandum identified the "seller" as ASJJ Properties and the buyer as Riverview.

By late December 2020, plaintiff had not received its finder's fee, so it claimed a commercial real estate broker's lien on the hotel property. That lien was recorded by the Berrien County Register of Deeds on December 23, 2020, and it identified the owner of the property as ASJJ Management (not ASJJ Properties).

Plaintiff filed the complaint giving rise to this case on January 28, 2021. In its complaint, plaintiff sought to foreclose on its lien. But plaintiff attached to its complaint not the lien that it recorded with the Berrien County Register of Deeds (which named ASJJ Management as the owner of the hotel property) but a lien naming ASJJ Properties as the owner of the hotel property.

No one initially caught this discrepancy. ASJJ Management failed to respond to plaintiff's complaint, and a default was entered against it. ASJJ Management moved to set aside this default on June 9, 2021, and it attached to its motion an affidavit signed by Fakhouri in which he swore that the hotel property was owned by ASJJ Properties, not ASJJ Management. The default against ASJJ Management was set aside on February 14, 2023, and in ASJJ Management's March 3, 2023 answer to plaintiff's complaint, ASJJ Management again denied that it owned the hotel property.

On April 17, 2023, presumably on the basis of ASJJ Management's representations, plaintiff asked for leave to amend its complaint to add ASJJ Properties as a defendant. The court denied this motion on May 30, 2023, because plaintiff did not include with its motion a copy of the proposed amended complaint. At no point thereafter did plaintiff file a proper motion to amend its complaint, so ASJJ Properties was never added as a defendant.

By late December 2023, the parties had nearly reached a settlement, but on December 29, 2023, ASJJ Management's counsel finally discovered the discrepancy between the lien attached to plaintiff's complaint and the lien recorded with the Berrien County Register of Deeds. That same day, ASJJ Management's counsel sent plaintiff's counsel's an email alleging that the lien attached to plaintiff's complaint "was doctored" and did not match "the actual recorded lien."

ASJJ Management's counsel sent a second email the following day in which she alleged that plaintiff's counsel was attempting "to foreclose on a forged lien."

The parties had a trial scheduled for January 16, 2024, but due to ASJJ Management's recent discovery of the supposed forgery and because the parties could not resolve the issue among themselves, ASJJ Management filed a motion for sanctions on January 4, 2024. In this motion, ASJJ Management alleged that the lien attached to plaintiff's complaint (which named ASJJ Properties as the owner of the hotel property) was a "forgery" and did not match the lien recorded with the Berrien County Register of Deeds (which named ASJJ Management as the owner). ASJJ Management further asserted that, forgery allegations aside, the lien recorded with the Register of Deeds was "invalid" under MCL 570.584—the statute specifying what a commercial real estate broker's lien must include—because it did not name the record owner of the hotel property (i.e., ASJJ Properties). ASJJ Management asked the trial court to dismiss this action as a sanction.

Plaintiff responded on January 11, 2024, denying any wrongdoing. Plaintiff emphasized that the lien attached to its complaint, while apparently not recorded by the Berrien Register of Deeds, had a sticker on it from the Berrien County Register of Deeds and was stamped as a "NON-OFFICIAL COPY." Plaintiff conceded that the actual lien recorded with the Register of Deeds did not have this stamp, and despite investigating the issue, plaintiff could "provide no explanation for the discrepancy brought up in Defendant's motion[.]" Plaintiff also vehemently denied that either the defect in the lien recorded with the Register of Deeds or the fact that plaintiff attached the wrong lien to its complaint required dismissal of this action. As relevant to this appeal, plaintiff asked that it be allowed to amend its complaint to add the lien actually filed with the Register of Deeds, and it argued that that lien was not invalid because a commercial real estate broker's lien only needed to name an owner of the commercial real estate, and there was a question of fact whether ASJJ Management was an equitable owner of the hotel property, regardless of whether it was the owner of record. Plaintiff alternatively claimed that the parties had a binding settlement agreement and asked that the trial court enforce it.

The following day, plaintiff filed a supplemental brief alleging that, upon further investigation, plaintiff's counsel had been able to discover the reason for the discrepancy between the lien attached to plaintiff's complaint and the lien recoded by the Berrien County Register of Deeds. Plaintiff explained that its representative had actually attempted to file two liens on the hotel property—one naming ASJJ Management as the owner, the other naming ASJJ Properties as the owner. But, according to plaintiff, the Berrien County Register of Deeds mistook the liens as duplicates, so it recorded one and sent the other back to plaintiff stamped as a "NON-OFFICIAL COPY."[1]

_____

[1] Plaintiff supported this assertion with an affidavit signed by Lora Freehling, the Register of Deeds for Berrien County, in which Freehling confirmed that it was possible that someone from the Register of Deeds mistook the unrecorded lien naming ASJJ Properties as a duplicate of the recorded lien naming ASJJ Management, which explained why the lien naming ASJJ Management was recorded and the one naming ASJJ Properties had a sticker from the Berrien County Register of Deeds but was never recorded.

During a lengthy hearing on ASJJ Management's motion for sanctions, the trial court asked plaintiff a variety of questions (with a focus on whether plaintiff could identify any record evidence showing that ASJJ Management was a record owner of the hotel property) and allowed plaintiff ample opportunity to plead its case. After hearing from both parties, the court granted ASJJ Management's motion in a ruling from the bench, although for slightly different reasoning. The trial court's explanation for its decision to sanction plaintiff is lengthy, but plaintiff does not challenge the imposition of sanctions on appeal. It therefore suffices to say that the trial court faulted plaintiff for not exercising due diligence to ensure that it attached to its complaint a lien that was actually recorded with the Register of Deeds, for not discovering the defect in its complaint at any point thereafter, and for apparently never realizing that it was attempting to foreclose on a lien on real property without including the entity that held title to the property (i.e., ASJJ Properties), even after ASJJ Management told plaintiff that it was not the titled owner of the property on which plaintiff was seeking to foreclose.

Turning to the substance of plaintiff's foreclosure claim, the court found that there was no genuine issue of material fact that plaintiff was attempting to foreclose on a lien that did not name the record owner of the property. The lien that plaintiff recorded with the Register of Deeds named ASJJ Management as the owner of the hotel property, but, according to the court, all of the evidence in the record established that ASJJ Properties alone was the record owner of that property. The court acknowledged that plaintiff offered an explanation as to why the lien naming ASJJ Properties was never recorded, but the court reasoned that, even with this explanation, the fact remained that the lien naming ASJJ Properties was never recorded—only the lien naming ASJJ Management (i.e., not the record owner) was recorded. The court concluded that nothing before the court "demonstrate[d] that ASJJ Hotel Management is a record title owner upon which a claim of lien could be based," so the lien that plaintiff recorded with the Register of Deeds was "void and invalid and is struck." And because the court was striking the lien, it was also "dismissing the claim against ASJJ Hotel Management" and Riverview. The court explained that "there's no claim of lien that can be foreclosed," so plaintiff's complaint—which relied exclusively on the lien—had to be dismissed. The court clarified that it was not dismissing plaintiff's complaint as a sanction but on grounds that plaintiff could not establish its foreclosure claim as a matter of law.

Following this hearing, the trial court entered an order stating that, "[p]ursuant to MCR 1.109(E)(5) and (6) and MCR 2.116(I)," the court was granting ASJJ Management's motion for sanctions, striking the lien that plaintiff recorded with the Berrien County Register of Deeds, and dismissing plaintiff's claims against ASJJ Management and Riverview with prejudice.

This appeal followed.

## II. SETTLEMENT AGREEMENT

Before addressing the other issues that plaintiff raises on appeal, it is necessary to address its argument that the parties had a binding settlement agreement because, if they did, then there is no reason to address plaintiff's other arguments. The trial court did not explicitly address plaintiff's contention that the parties had a binding settlement agreement, but because plaintiff raised this issue below, it is preserved. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). The existence and interpretation of a settlement agreement are

-4-

questions of law, reviewed de novo. *In re Raymond T Conley Trust*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366180); slip op at 3-4.

An agreement to settle a pending lawsuit is a contract. *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). A contract is formed when there is an offer and unambiguous acceptance "in strict conformance with the offer." *Pakideh v Franklin Commercial Mortgage Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995). A contract can only be formed when there is "mutual assent" to "all the essential terms." *Kloian*, 273 Mich App at 453. MCR 2.507(G) provides, "An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding . . . unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." By requiring that the agreement be in writing, MCR 2.507(G) acts "in the nature of a statute of frauds." *Kloian*, 273 Mich App at 456.

Plaintiff contends that the parties had a binding settlement agreement as demonstrated by a series of emails exchanged by the parties' attorneys, but none of these emails establish that the parties had reached a settlement agreement. Plaintiff directs this Court's attention to a December 23, 2023 email that ASJJ Management's attorney sent to plaintiff's attorney in which ASJJ Management's attorney states that her client would agree to pay a sum certain, but she conditions this payment on certain prerequisites being met, such as Riverview agreeing to pay an undisclosed amount, a "sufficient" mutual release, and "get[ting] the Notice of Lis Pendens released," which "was not something that either of [the parties] previously mentioned." In a later email sent on December 28, 2023, plaintiff's counsel attached "the proposed settlement agreement," and ASJJ Management's attorney responded that she was waiting to get her "client's authorization" to "the changes" and asked for more time "to get everything finalized and signed." None of these emails demonstrate unambiguous acceptance in strict conformance with an offer, see *Pakideh*, 213 Mich App at 640, nor do they suggest the existence of mutual assent to "all the essential terms," *Kloian*, 273 Mich App at 453. In fact, the emails clearly demonstrate that ASJJ Management had *not* agreed to the proposed settlement as of December 28, 2023, and the following day is when settlement negotiations broke down because ASJJ Management's counsel discovered that the lien attached to plaintiff's complaint was different from the lien that plaintiff recorded with the Berrien County Register of Deeds. We accordingly reject plaintiff's wholly meritless argument that the parties had a binding settlement agreement that the trial court should have enforced.

III. MCL 570.584

Plaintiff also argues that the trial court erred when it held that the lien plaintiff filed with the Berrien County Register of Deeds was invalid and unenforceable because it did not name the *record* owner of the hotel property. On this point, we agree.

The CREBLA "was enacted to protect the right of commercial real estate brokers to collect their contractually negotiated commissions." *Anton, Sowerby & Assoc, Inc v Mr C's Lake Orion, LLC*, 309 Mich App 535, 538; 872 NW2d 699 (2015). The CREBLA allows a commercial real estate broker who is owed a commission for its services to record a claim of lien against the property sold or leased, and bring an action to foreclose that lien. MCL 570.584; MCL 570.586. MCL 570.584(9) provides what such a lien is required to include, stating:

-5-

(9) A claim of lien shall contain all of the following:

(a) The name and the license number of the claimant.

(b) *The name of the owner of the commercial real estate.*

(c) The amount for which the lien is claimed.

(d) As an attachment, the legal description of the commercial real estate on which the lien is being claimed.

(e) As an attachment, a legible copy of the written instrument on which the claim for commission or fee is based.

(f) A statement that the information contained in the claim of lien is true and accurate to the knowledge of the signer.

(g) The notarized signature of the real estate broker or a person authorized to sign on behalf of the real estate broker.  [Emphasis added.]

MCL 570.584(12) provides, "A claim of lien not recorded in compliance with this section is void and unenforceable."

The trial court ruled that MCL 570.584(9)(b)'s requirement that a lien include "[t]he name of the owner of the commercial real estate" meant that the lien must include the name of, in the trial court's words, the "record title owner."  Because the lien that plaintiff recorded with the Berrien County Register of Deeds did not name the "record title owner" of the hotel property, the court concluded that the lien was "void" under MCL 570.584(12).  Plaintiff contends that the trial court erred by concluding that MCL 570.584(9)(b) requires that a lien name the record owner of property because that subsection requires only that a lien contain "[t]he name of the owner of the commercial real estate," which, according to plaintiff, may include owners of property other than the owner that holds recorded title to the property.

This issue presents a question of statutory interpretation, which is a question of law reviewed de novo.  *Farris v McKaig*, 324 Mich App 349, 352; 920 NW2d 377 (2018).  The goal of statutory interpretation is to give effect to the Legislature's intent.  *Bronson Health Care Group, Inc v Esurance Prop & Cas Ins Co*, 348 Mich App 428, 439; 19 NW3d 151 (2023).  A statute's language is the best evidence of the Legislature's intent, and when that language is unambiguous, the statute must be enforced as written.  *Farris*, 324 Mich App at 353.

The question on appeal is whether the requirement in MCL 570.584(9)(b) that a commercial real estate broker's lien contain "[t]he name of the owner of the commercial real estate" means that the lien must contain the name of the record owner of the property.  ASJJ Management contends that it does on the basis of MCL 570.584(10), which states that "[a] claim of lien recorded under this section shall . . . be substantially in the following form," and the ensuing form provides, "The record owner ("owner") of the property is _____."  This provides tangential support for ASJJ Management's position that MCL 570.584(9)(b) requires that a

commercial real estate broker's lien name the "record owner" of the property on which the lien is recorded, but, by its plain terms, MCL 570.584(10) requires only substantial compliance with its form.  To accept ASJJ Management's argument that MCL 570.584(10) *requires* that a commercial real estate broker's lien name the record owner of property would effectively mandate strict compliance with MCL 570.584(10), which is the opposite of what the statute plainly says.  We therefore do not consider MCL 570.584(10) to be conclusive of the question before us, and we look elsewhere to see if there is better evidence of what the Legislature intended by requiring that a commercial real estate broker's lien contain "[t]he name of the owner of the commercial real estate."  MCL 570.584(9)(b).

Reading the CREBLA as a whole, the act uses both "the owner of commercial real estate" and "the owner of record" multiple times.  MCL 570.584(9)(b) and MCL 570.589 each refer to "the owner of commercial real estate," while MCL 570.584(11), MCL 570.590, and MCL 570.591 all refer to "the owner of record."  The use of these two different terms, not only in MCL 570.584 itself but throughout the CREBLA, suggests that the Legislature consciously differentiated between them.  This in turn implicates the general rule that, when the Legislature uses different terms, those terms "connote distinct meanings."  *Brightmoore Gardens, LLC v Marijuana Regulatory Agency*, 337 Mich App 149, 170; 975 NW2d 52 (2021).  See also *Saugatuck Dunes Coastal Alliance v Dep't of Environment, Great Lakes, & Energy*, ___ Mich App ___, ___; NW3d ___ (2025) (Docket No. 367989); slip op at 5.  Applying this principle here, the Legislature's use of "the owner of commercial real estate" and "the owner of record" throughout the CREBLA evinces that these terms have distinct meanings.

As for what the terms mean, we conclude that "owner of record" as used in the CREBLA can be defined by looking at the CREBLA itself.  While the act does not define the term "owner," it does define "record."  MCL 570.582(e) states that, as used in the CREBLA, "record" "means to record with the register of deeds for the county in which the commercial real estate is located."  While this definition defines "record" only when used as a verb, and "owner of record" uses "record" as a type of noun, we nevertheless believe it useful to consult the definition of "record" in MCL 570.582(e) under the circumstances.  Relying on that definition, an "owner of record" as used in the CREBLA means an owner as "record[ed] with the register of deeds for the county in which the commercial real estate is located."  MCL 570.582(e).

This definition is in accord with how the phrase "owner of record" is generally understood.  "Owner of record" a legal term of art, so it is appropriate to consult a legal dictionary to define it.  See *Farris*, 324 Mich App at 354.  The version of *Black's Law Dictionary* that was in effect when MCL 570.584(9)(b) was enacted by 2010 PA 201 used "owner of record" and "record owner" interchangeably, and the relevant definition of "record owner" is "[a] property owner in whose name the title appears in the public records."  *Black's Law Dictionary* (9th ed), p 1215.[2]  See *In re AJR*, 496 Mich 346, 359; 852 NW2d 760 (2014) (explaining that, "[t]o determine the Legislature's intent" when enacting a statute that uses a legal term of art, "we refer to a contemporaneous legal dictionary").  It follows that, to any extent that it may be technically improper to rely on MCL

---

[2] *Black's Law Dictionary* (12th ed)—the current version of that dictionary—defines "owner of record" and "record owner" the same way as *Black's Law Dictionary* (9th ed).

570.582(e) to define "owner of record" as used in the CREBLA, the definition derived from relying on that subsection is consistent with how the phrase "owner of record" is generally understood. Indeed, without consulting the statute or a dictionary, the trial court concluded that plaintiff's lien failed to identify the record owner of the hotel property because ASJJ Management was not the titled owner of the property as recorded with the Berrien County Register of Deeds. In other words, the trial court understood the term as this opinion defines it.

The trial court's error was not in its definition of "record owner" but in the court's conclusion that "owner of commercial real estate" as used in MCL 570.584(9)(b) required that a commercial real estate broker's lien name the record owner. As explained, the Legislature's use of the terms "owner of record" and "owner of commercial real estate" throughout the CREBLA suggests that the terms have distinct meanings, and the trial court erred by conflating them. The term "owner of commercial real estate" is broader than the term "record owner," and it includes types of owners besides an owner with title as recorded with the register of deeds of the county in which the real estate is located. See, e.g., *Ligon v City of Detroit*, 276 Mich App 120, 125; 739 NW2d 900 (2007) (recognizing that a "land-contract vendee" is an "equitable owner" of real property); *Beach v Twp of Lima*, 489 Mich 99, 107; 802 NW2d 1 (2011) (recognizing that an adverse possessor has "legal title" to the property that is an "ownership interest" despite not being recorded).[3]

This conclusion is sufficient to resolve this appeal, so we need not, and do not, define the precise contours of what the term "owner of commercial real estate" as used in MCL 570.584(9)(b) means. We hold only that MCL 570.584(9)(b) requires what it says—that a commercial real estate broker's lien contain "[t]he name of the owner of the commercial real estate," which does not necessarily require that the lien contain the name of the "record owner" or "the owner of record" as that term is used elsewhere in the CREBLA. While the trial court correctly found that there was no genuine issue of material fact that ASJJ Management was not the record owner of the hotel property, it erred by concluding that this meant that plaintiff's claim failed as a matter of law. MCL 570.584(9)(b) requires only that a commercial real estate broker's lien identify "[t]he name of the owner of the commercial real estate," and the trial court never addressed plaintiff's argument that there was sufficient evidence to create a question of fact that ASJJ Management—which plaintiff's lien named as the owner of the hotel property—was an owner of the hotel property.

The trial court's order is accordingly vacated to the extent that it (1) dismissed plaintiff's claims against ASJJ Management and Riverview and (2) found that the lien that plaintiff recorded with the Berrien County Register of deeds was void and enforceable, and ordered that the lien be stricken from the record. On remand, the parties are free to litigate—and the trial court is free decide—whether there is sufficient evidence to establish a material issue of fact whether ASJJ

---

[3] These are merely examples of circumstances in which a person or entity can be an owner of property without holding recorded title to it. These examples are not intended to be an exhaustive list.

Management is an owner of the hotel property, such that the lien that plaintiff recorded with the Berrien County Register of Deeds complies with MCL 570.584(9)(b)'s requirements.[4]

## IV.  ATTORNEY DISQUALIFICATION

Plaintiff lastly contends that the trial court erred by denying plaintiff's motion to disqualify ASJJ Management's counsel, Sara Lachman.  We disagree.

After ASJJ Management filed its motion for sanctions, plaintiff moved to disqualify Lachman.  The trial court denied plaintiff's motion in its January 16, 2024 order.

"The trial court's findings of fact in regard to a motion for disqualification of counsel are reviewed for clear error," while its application of the relevant law to those facts is reviewed de novo. *People v Tesen*, 276 Mich App 134, 141; 739 NW2d 689 (2007).  "[T]he application of 'ethical norms' to a decision whether to disqualify counsel is also reviewed de novo." *Id.*

Plaintiff contends that Lachman must be disqualified because she is a necessary witness.  This is so, plaintiff argues, because ASJJ Management denied that a closing occurred with respect to the land contract between the ASJJ entities and Riverview, but the land contract showed Lachman's "intimate involvement with the closing," making Lachman a necessary witness "to testify that a closing did in fact occur."

The Michigan Rules of Professional Conduct generally prohibit a lawyer from representing a client at trial if the lawyer is a necessary witness:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.  [MRPC 3.7(a).]

Plaintiff, as the party seeking disqualification, bears the burden of establishing that Lachman was a necessary witness.  See *Tesen*, 276 Mich App at 144.  "[A]ttorneys are not necessary witnesses if the substance of their testimony can be elicited from other witnesses and

---

[4] We note that plaintiff presented evidence tending to establish that the lien it attempted to file naming ASJJ Properties as the owner of the hotel property was never recorded due to the Berrien County Register of Deeds' clerical error.  Plaintiff has never argued that this lien should have been deemed recorded as of the date that it was delivered to the Register of Deeds despite the fact that it was never officially recorded.  See MCL 565.24a(2).  We therefore offer no opinion on whether this argument has merit, and nothing in this opinion should be construed as opining on that issue.

the party seeking disqualification did not previously state an intent to call the attorney as a witness." *Id*. Plaintiff's evidence that Lachman was "intimately involved" in the alleged closing are two emails, one in which Lachman sent information to three other people and copied a fourth, and the other in which someone sent information to another person and copied Lachman and a third person. Clearly, the substance of Lachman's testimony that would relate to these emails can be elicited from any of the other individuals included on these emails. Additionally, plaintiff never previously stated an intent to call Lachman as a witness. Accordingly, plaintiff has not carried its burden of establishing that Lachman should be disqualified on grounds that she was a necessary witness. See *id*.

## V. CONCLUSION

The trial court properly denied plaintiff's request to enforce a nonexistent settlement agreement and to disqualify ASJJ Management's counsel. The trial court erred, however, by dismissing plaintiff's complaint on grounds that the lien on which plaintiff was seeking to foreclose was void because it did not name the record owner of the hotel property. MCL 570.584(9)(b) only requires that a commercial real estate broker's lien contain "[t]he name of the owner of the commercial real estate," which does not necessarily require that the lien contain the name of the "record owner" or "the owner of record" as that term is used elsewhere in the CREBLA. We accordingly vacate the trial court's order to the extent that it struck plaintiff's lien and dismissed plaintiff's claims premised on that lien.[5] On remand, the parties are free to litigate whether ASJJ Management was an owner of the hotel property despite there being no genuine issue of material fact that ASJJ Management was not the record owner.[6]

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young

---

[5] Given this disposition, it unnecessary for us to address the due-process argument that plaintiff raises on appeal.

[6] We also note that, as the trial court correctly observed, ASJJ Properties is a necessary party to this action and, as the record owner, should have been named as a defendant by plaintiff. See MCL 570.586(2) ("The plaintiff in an action under this section shall name as defendants all persons that, at the time the action is filed, have an interest in the commercial real estate that is the subject of the action that would be divested or impaired by the foreclosure of the lien.").