# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 19, 2016

Plaintiff-Appellee,

v

No. 325264
Newaygo Circuit Court
LC No. 14-010737-FC

JOHN THOMAS WIREMAN,

Defendant-Appellant.

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(b) (victim at least 13 but less than 16 years of age and related to the actor or a member of the same household).[1] We affirm.

## I. BACKGROUND

The victim testified at trial that when she was between 12 and 15 years old, she visited her cousin Melissa's apartment in White Cloud every weekend. Defendant was Melissa's husband at the time. The victim often babysat Melissa's children while Melissa left the apartment to run errands. During such times, the victim and defendant were the only people in the apartment except for the very young children. The victim testified that when she was 12 or 13 years old, defendant put his hand down her pants and put his finger inside her vagina while they were alone in the White Cloud apartment. The victim further testified that when she was between 13 and 15 years old, defendant forced her to perform fellatio on him and he engaged in vaginal and anal intercourse with her. She testified that these encounters occurred nearly every time she visited the apartment.

## II. PROSECUTORIAL ERROR

Defendant first argues on appeal that the prosecutor committed misconduct[2] when he elicited certain testimony from Sara Smith, a worker from Child Protective Services (CPS).

---

[1] Defendant was acquitted of three counts of third-degree CSC, MCL 750.520d.

-1-

Defendant argues that Smith's testimony constituted improper vouching for the victim's credibility. We review defendant's unpreserved claim of prosecutorial error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The test for prosecutorial error is "whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). We decide issues of prosecutorial error on a case by case basis, considering the record as a whole and evaluating the prosecutor's remarks in context. *Id*. at 64. A defendant may not base a claim of prosecutorial error on a prosecutor's good-faith efforts to admit evidence. *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). "The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *Id*.

Subject to MRE 403, a prosecutor may offer any relevant evidence. MRE 402; *People v Mills*, 450 Mich 61, 70; 537 NW2d 909, mod 450 Mich 1212 (1995). A witness's credibility is always an appropriate topic of consideration for the jury. *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995). However, "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *Dobek*, 274 Mich App at 71. "Such comments have no probative value because they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) (citations and quotation marks omitted).

Defendant specifically argues that the prosecutor erred by eliciting testimony from Smith that she interviewed the victim using the Michigan Forensic Interviewing Protocol (MFIP). Smith testified that the MFIP was used for the purpose of obtaining truthful information from child interviewees. The record does not reveal that, by eliciting the testimony, the prosecutor was attempting to have Smith improperly vouch for the victim's credibility. Rather, the prosecutor was merely trying to clarify the process by which Smith interviewed the victim, which is relevant "to a fact-finder trying to determine the weight and credibility of the victim's account of the charged offenses." *People v Tesen*, 276 Mich App 134, 144; 739 NW2d 689 (2007). Smith did not provide an opinion on the credibility of the victim by describing the MFIP. Accordingly, defendant has not shown that the prosecutor's conduct was anything other than a good-faith effort to admit evidence.

Defendant next argues that the prosecutor erred by eliciting the following testimony from Smith:

> *Q*. Did you open a file, a case, or what do you call it?

---

[2] This Court recently explained that although the phrase "prosecutorial misconduct" has become a term of art in criminal appeals, the term "misconduct" is only properly applied in extreme instances in which a prosecutor's conduct is illegal or violates the rules of professional conduct. *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Claims such as those presented here are more fairly characterized as claims of "prosecutorial error." *Id*. at 88.

*A.* Yes, we substantiated; meaning we found preponderance of evidence in our case.

The Michigan Supreme Court recently held that a CPS worker's testimony that a victim's "allegations had been substantiated" "violated the well-established principle that 'it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial.' " *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014), quoting *Musser*, 494 Mich at 349.[3] However, there is no indication that the prosecutor elicited this testimony in bad faith. The prosecutor simply asked Smith whether she opened a case to provide context for the events. See *People v Sholl*, 453 Mich 730, 741; 556 NW2d 851 (1996). Smith then provided a nonresponsive answer. A witness's nonresponsive answer to a prosecutor's question does not constitute prosecutorial error unless the prosecutor knew, encouraged, or conspired with the witness to provide the unresponsive testimony. See *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Because nothing in the record suggests that the prosecutor knew or encouraged Smith's nonresponsive answer, defendant has not established prosecutorial error in this regard.

However, we agree with defendant that the prosecutor erred when, immediately after Smith provided the nonresponsive testimony that CPS substantiated its case against defendant, he questioned Smith about the people CPS interviewed during its investigation. Specifically, the prosecutor asked Smith how many people CPS interviewed, whether CPS interviewed Melissa and defendant's children, whether CPS interviewed defendant's children with other women, whether those children had reached puberty, and whether CPS interviewed anyone besides the

---

[3] It is unclear from *Douglas* whether a statement that CPS "substantiated" its case against a defendant, standing alone, is impermissible. In *Douglas*, 496 Mich at 583, the CPS worker's testimony that a complainant's "allegations had been substantiated" was also accompanied by a statement that "there was no indication that [the complainant] was coached or being untruthful." The Supreme Court concluded that this constituted improper vouching for the complainant's credibility. *Id.* In this case, as it would be in any criminal prosecution, it seems apparent that all in the chain of events leading to trial, from the victim's grandmother, to CPS, the police, the prosecutor, the magistrate, and the district judge at the preliminary exam, concluded that the allegations against defendant had been "substantiated" to some degree. The testimony of a CPS worker that she had "substantiated" the allegations, without more, seems merely to be stating the obvious fact that she found merit in the complainant's allegations against defendant. Making such a statement at trial would not seem unduly prejudicial to a defendant because it is not a direct commentary on the complainant's truthfulness. However, in light of the fact that Smith testified that CPS substantiated its case against defendant, *and* identified the evidentiary standard used (i.e., suggesting that in the worker's mind a preponderance of all the evidence in the case indicated the defendant's guilt), we conclude that this testimony rose to the level of improper vouching under *Douglas*.

victim who was not a blood relative of defendant. Smith answered that CPS interviewed eight of defendant's children during its investigation and provided various details regarding the children.[4]

Considering the circumstances of this case, we conclude that Smith's testimony was inadmissible under MRE 403. The testimony regarding CPS's additional interviews had some probative value because it served to bolster the victim's credibility by implying that the children's interviews supported the allegations against defendant. See *Coleman*, 210 Mich App at 8. However, the probative value of the testimony was limited because Smith did not testify regarding what the children actually said. Because Smith gave this testimony immediately after testifying that CPS substantiated its case against defendant, we conclude that the marginally probative value of the evidence was substantially outweighed by the danger that the jury would give the testimony preemptive or undue weight by concluding that CPS's interviews of the children yielded evidence that allowed it to substantiate its case against defendant. See *Douglas*, 496 Mich at 583. Giving Smith's testimony such weight would be "substantially out of proportion to its logically damaging effect." *Mills*, 450 Mich at 75-76 (quotation marks and citation omitted). For these reasons, the testimony was inadmissible under MRE 403. The prosecutor exhibited a "pattern of eliciting inadmissible testimony" by asking Smith several questions regarding CPS's interviews of children other than the victim. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (quotation marks and citation omitted). Therefore, we conclude that the prosecutor erred in this one respect.

Nonetheless, reversal is not required because the prosecutor's error did not affect the outcome of the proceedings. *Carines*, 460 Mich at 763. The jury convicted defendant of three counts of CSC I under MCL 750.520b(1)(b), which states in relevant part the following:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

* * *

(b) That other person is at least 13 but less than 16 years of age and any of the following:

(*i*) The actor is a member of the same household as the victim.

(*ii*) The actor is related to the victim by blood or affinity to the fourth degree.

Defendant does not dispute that the victim was at least 13 but less than 16 years old at the time of the alleged sexual abuse, that he was a member of the same household as the victim, or that he was related to the victim by affinity. Rather, defendant only disputes that the sexual abuse took place. The victim provided extensive and detailed testimony at trial regarding the abuse, and a victim's testimony need not be corroborated in a prosecution for CSC I.

---

[4] We note that Smith did not testify as to what any of the children said during their interviews.

MCL 750.520h; *People v Phelps*, 288 Mich App 123, 132; 791 NW2d 732 (2010). Smith also testified that the victim's grandmother indicated that the victim told her defendant once threatened the victim for sex. Further, Melissa's testimony corroborated the victim's testimony that the victim and defendant were often the only people in the White Cloud apartment, except for Melissa's young children. Additionally, although Smith's testimony regarding the CPS interviews of children other than the victim was improper, Smith did not testify regarding what specific information the children provided, and she did not explicitly comment on the victim's credibility.

Moreover, to the extent that defendant was prejudiced by Smith's testimony, the trial court's jury instructions cured any error. After Smith testified about CPS substantiating its case against defendant by a preponderance of the evidence, the trial court instructed the jury that the presumption of defendant's innocence "continues throughout the trial and entitles the defendant to a verdict of not guilty unless you are satisfied beyond a reasonable doubt that he is guilty." The court's instruction emphasized that the jury was required to use the stricter beyond a reasonable doubt standard, as opposed to the preponderance of the evidence standard mentioned by Smith. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Additionally, we will not find error requiring reversal if a curative instruction could have alleviated any prejudicial effect. *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003). In this case, a curative instruction to the jury to disregard Smith's nonresponsive testimony regarding the substantiated CPS case and her testimony about interviewing children other than the victim could have alleviated the prejudicial effect of the testimony. Further, the prosecutor did not argue or imply during closing argument or rebuttal that the CPS interviews of children other than the victim bolstered the victim's credibility. For all of the above reasons, we conclude that the prosecutor's error did not affect the outcome of the proceedings, so reversal is not required. See *Carines*, 460 Mich at 763.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel was ineffective for failing to object to Smith's challenged testimony. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's factual findings for clear error, and review constitutional questions de novo. *Id*. Review of unpreserved ineffective assistance claims, like the one presented here, is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). A defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003). "Counsel is not ineffective for failing to make a futile objection." *People v Horn*, 279 Mich App 31, 39-40; 755 NW2d 212 (2008).

Defendant first challenges his counsel's failure to object to Smith's testimony regarding the MFIP interview. As explained above, this testimony was admissible, so any objection would have been futile. Defendant next challenges his counsel's failure to object to Smith's testimony that CPS substantiated its case against defendant, and Smith's testimony regarding the CPS interviews of children other than the victim. We agree that defense counsel's performance fell below an objective standard of reasonableness when she failed to object to this inadmissible testimony. See *Douglas*, 496 Mich at 583-585 (holding that defense counsel's failure to object to a CPS worker's testimony that "allegations had been substantiated" fell below an objective standard of reasonableness). Contrary to the prosecution's argument on appeal, defense counsel's failure to object was not supported by any sound or reasonable trial strategy. See *id*. at 586 ("We see no sound strategy in counsel's failure to object to the vouching testimony . . . .").

Nonetheless, defendant has not shown that there is a reasonable probability that the outcome of the proceedings would have been different absent counsel's errors. As discussed above, the victim provided detailed and extensive testimony about defendant's sexual abuse and Melissa corroborated the victim's testimony that she and defendant were often alone together. Although Smith's testimony was improper, she did not explicitly comment on the victim's credibility, and after her testimony, the trial court provided a jury instruction that we presume cured any error. Under these circumstances, defendant has not shown that reversal is warranted.

Finally, defendant's argument that our Supreme Court's holding in *Douglas*, 496 Mich 557, requires reversal also fails. In *Douglas*, the defendant was convicted of CSC after a trial that was replete with evidentiary errors. *Id*. at 564-566. Specifically, the trial court erroneously admitted two out-of-court statements made by the child victim, and defense counsel did not object to three witnesses offering inadmissible testimony vouching for the child's credibility. *Id*. at 566. The court noted that the error in admitting the testimony was not harmless because the testimony "added clarity, detail, and legitimacy to" the victim's testimony in a case that "hinged wholly on the credibility of [the victim's] allegations." *Id*. at 581, 586. The errors in this case are not so encompassing or cumulative that they warrant reversal.

Affirmed.


/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola

-6-