*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN JOSEPH PHILIPPS,

        Defendant-Appellant.

UNPUBLISHED
July 20, 2023

No. 360042
Menominee Circuit Court
LC No. 2020-004200-FC

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a), and reckless driving causing serious impairment of a body function, MCL 257.626(2) and (3). The trial court sentenced defendant to 38 months to 10 years' imprisonment for his AWIGBH conviction, and one year in prison for his reckless driving conviction. We affirm.

## I. FACTUAL BACKGROUND

In the summer of 2019, defendant and the victim decided to start a marijuana growing operation. The victim gave defendant $130 to purchase materials to start the business. The deal fell through after the victim insulted the marijuana plants that defendant intended to buy. According to defendant, at one point, he and the victim went to look at marijuana seedlings, which were approximately one month old. The victim was confused because he thought the plants would have been larger. According to the victim, when defendant showed him the plants, "they were less than an inch [tall]". The victim believed that his money was being wasted and expressed his disappointment to defendant. He believed that defendant became upset with him for saying that the plants did not look good. After defendant and the victim looked at the plants, defendant told the victim that he was "out of the deal," even after the victim attempted to apologize. At that point, the victim asked defendant to give him his money back. After a considerable amount of back-and-forth over the following days, defendant eventually agreed to return the victim's money.

Defendant and his wife stopped at the victim's house with the money, at which point defendant and the victim got into another argument. Defendant and the victim recall the events

-1-

leading up to the assault differently. The victim testified that he had been swimming nearby and was not home when defendant arrived at his house. When the victim pulled into his driveway and got out of his car, defendant began moving his car and threw some money on the ground. The victim said that he found two $20 bills on the ground and went up to defendant's car to tell him $40 was not enough money. According to the victim, defendant did not respond verbally, and instead struck him in the face with his left hand. The victim testified that he backed up to an area near the side of the driveway, and asked where defendant was going. Defendant "respond[ed] by throwing his car in reverse, and then flying forward, and running me over, without stopping whatsoever." The victim was hit by the front of the car. He "remembered getting hit and getting shot right underneath it." Two friends who were with the victim at the time also testified that they saw defendant deliberately hit the victim with his car.

According to defendant, when the victim pulled into the driveway, he hopped out of his car and began threatening defendant and his wife. Defendant and his wife both testified that the victim tried to put his upper body inside the vehicle and grab defendant's neck. Defendant testified that he was afraid for himself and for his wife and put the car in drive in an attempt to get away. Defendant said that he pulled forward and immediately to the left. Defendant testified that the victim jumped onto the hood of the car as it was moving. The victim landed with his stomach down on the middle of the hood before letting go and falling straight under the car.

Defendant and his wife drove to the house of defendant's father, an attorney, locked the car in his garage, and hid in the basement. Defendant later turned himself in to the police, and was ultimately found guilty as previously described. This appeal followed.

## II. ANALYSIS

### A. DISQUALIFICATION

Before trial, the prosecution moved to disqualify defendant's father from acting as his attorney on the basis that the father's testimony may be necessary at trial. The trial court granted the motion. On appeal, defendant argues that the trial court erred because his father's testimony was not likely to be necessary and, even if it was, his father should not have been disqualified before trial.

To preserve an issue for appeal, the defendant must raise it before the trial court at the time that the trial court has an opportunity to correct the error. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Defendant contested his father's disqualification below, but he did not argue that his father should be allowed to represent him during pretrial proceedings even if his testimony was necessary at trial. This new argument is unpreserved.

This Court reviews for clear error the trial court's findings of fact regarding a motion to disqualify counsel. *People v Tesen*, 276 Mich App 134, 141; 739 NW2d 689 (2007). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). This Court reviews de novo the trial court's application of the law to the facts and the court's application of ethical norms. *Tesen*, 276 Mich App at 141. However, unpreserved issues are reviewed for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750,

763; 597 NW2d 130 (1999). "An error is plain if it is 'clear or obvious,' and it affects substantial rights if it 'affected the outcome of the lower court proceedings.' " *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019), quoting *Carines*, 460 Mich at 764-765. Reversal is only warranted if a defendant has shown actual innocence or that the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Carines*, 460 Mich at 763-764.

The United States and Michigan Constitutions provide that an accused is entitled to counsel to assist in his or her defense. US Const, Am 6; Const 1963, art 1, § 20. This right includes the right of the accused to select a preferred attorney, subject to limitations. *Wheat v United States*, 486 US 153, 159; 108 S Ct 1692; 100 L Ed 2d 140 (1988). One such limitation is that counsel's representation may not breach professional ethics. *Id*. at 162.

The Michigan Rules of Professional Conduct establish that a lawyer cannot act as an advocate at trial under certain circumstances:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client. [MRPC 3.7(a).]

The purpose of this rule is to protect the interests of the parties and the reputation of the legal profession by ensuring that counsel would not be required to attack the credibility of a lawyer as a witness. *Kubiak v Hurr*, 143 Mich App 465, 471; 372 NW2d 341 (1985).

Defendant asserts that his father's potential testimony would not have been related to a contested issue because all he could testify to was that he owned the vehicle defendant was driving when he struck the victim. We reject this argument. The trial court considered that the vehicle belonged to defendant's father and reasoned that the vehicle, which was the instrumentality of the crime, would be crucial at trial. The court also observed that issues might arise regarding the maintenance of the vehicle, such as whether a malfunction could have caused the vehicle to veer, or whether defendant's father could have known about dents or trace evidence, which would have required his testimony. Additionally, the trial court pointed out that defendant parked the vehicle in his father's garage, where it remained before it was turned over to police. The circumstances surrounding this fact, including why defendant and his wife sought refuge at defendant's father's residence, were germane to the case. The trial court determined that it was proper to disqualify defendant's father because "he is a necessary witness, and he is likely to be called in the case because of his personal knowledge of the car before and after the incident." While defendant could have stipulated to his father's ownership of the car or the car's chain of custody, it was likely that issues might arise at trial about the vehicle that could have made it necessary for defendant's father to testify. We thus conclude that the trial court did not err by disqualifying defendant's father from acting as his attorney.

Defendant next argues that even if the trial court properly disqualified his father, it should have done so only for the limited purpose of the trial. MRPC 3.7(a) provides, subject to exceptions, that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ." The trial court interpreted MRPC 3.7(a) to mean that a lawyer may not advocate for a witness at *any* point if the lawyer is likely to be a necessary witness at a trial. Defendant argues that MRPC 3.7(a) should instead be interpreted to mean that the lawyer may not be an advocate at the specific trial where he or she is likely to be a necessary witness, but that the lawyer should be able to advocate for his or her client in pretrial proceedings. We conclude that defendant has not established plain error regarding this unpreserved issue. An error is plain when it is contrary to well-settled law. See *People v Vaughn*, 491 Mich 642, 665; 821 NW2d 288 (2012). Defendant has not cited any Michigan caselaw to support his interpretation of MRPC 3.7(a), nor has he provided any other authority to support his position. It is not this Court's responsibility to research the issue on defendant's behalf. *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008). Accordingly, defendant's claim must fail.

## B. PREARREST SILENCE

Defendant next argues that his constitutional rights were violated when the trial court admitted testimony from a police detective that he was unable to contact defendant's wife, except through defendant's attorney. Frankly, the legal basis of defendant's argument is unclear, but on the basis of the caselaw that defendant cites, he appears to be arguing that his prearrest silence cannot be used against him. Defendant has not established that his constitutional rights were violated by testimony concerning his prearrest silence.

In this case, defendant challenged the admission of evidence about the detective's attempts to contact defendant's wife on hearsay and relevance grounds. Defense counsel objected solely on hearsay and relevance grounds, and when asked to elaborate on his relevance objection, defense counsel merely reiterated that the testimony was not relevant. An objection on an evidentiary ground is not sufficient to preserve a constitutional question for review. *People v Hughes*, 506 Mich 512, 522-523; 958 NW2d 98 (2020). We thus conclude that defendant's argument is unpreserved. As previously discussed, this Court reviews unpreserved issues for plain error affecting a party's substantial rights. *Carines*, 460 Mich at 763.

The United States and Michigan Constitutions protect a defendant from compelled self-incrimination. US Const, Am V; Const 1963, art 1, § 17. Impeachment through use of a defendant's prearrest silence does not constitutionally deprive the defendant of his right to remain silent. *Jenkins v Anderson*, 447 US 231, 240; 100 S Ct 2124; 65 L Ed 2d 86 (1980); *People v Collier*, 426 Mich 23, 37; 393 NW2d 346 (1986). The propriety of the admission of evidence of a defendant's prearrest silence depends on whether the references were relevant and admissible. *People v Shelton*, 505 Mich 1135, 1135; 944 NW2d 717 (2020). Generally, evidence regarding consciousness of guilt, including evidence of attempts to avoid arrest, is relevant. *People v Parrott*, 335 Mich App 648, 680; 968 NW2d 548 (2021).

In this case, a police officer testified that he was aware that defendant's father was an attorney and went to his home shortly after the incident. According to the officer, defendant's father did not appear surprised to hear about the accident. The officer was unable to locate defendant or get a statement from him at that time. A detective also testified that defendant's

father prevented him from contacting defendant's wife, who was a witness to the crime for which defendant was charged. The detective explained that defendant's father would not give him any contact information for defendant's wife. To the extent that defendant objects to these statements as comments about his silence, the court was not required to exclude any evidence about defendant's prearrest silence. A "defendant's right to due process is implicated only where his silence is attributable to either an invocation of his Fifth Amendment right or his reliance on the *Miranda*[1] warnings." *People v Solmonson*, 261 Mich App 657, 664-665; 683 NW2d 761 (2004). If a "defendant's silence or non-responsive conduct did not occur during a custodial interrogation situation [or] in reliance on the *Miranda* warnings," it is "not a constitutionally protected silence." *People v Schollaert*, 194 Mich App 158, 166; 486 NW2d 312 (1992). Thus, defendant has not established any clear or obvious error in the admission of the officers' testimonies.

Additionally, to the extent that that defendant's argument can be read to be an attempt to assert his wife's constitutional rights, the argument must be rejected. A defendant generally does not have standing to challenge the violation of another person's constitutional rights. *People v Mahdi*, 317 Mich App 446, 459; 894 NW2d 732 (2016). Finally, to the extent that defendant's argument can be interpreted to assert any other constitutional rights or arguments, we consider them abandoned because defendant has given these issues cursory treatment at best. See *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016).

## C. JURY INSTRUCTIONS

Defendant next argues that the trial court erred by instructing the jury regarding the duty to retreat. He claims that defense counsel provided ineffective assistance by failing to object to the instruction. In a supplemental brief, defendant acknowledges that counsel forfeited this issue by explicitly and repeatedly expressing satisfaction with the jury instructions, see *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011), and argues that counsel was ineffective for acquiescing to the jury instructions. Defendant's arguments lack merit.

We first address whether the trial court erred by giving a jury instruction regarding the duty to retreat. "This Court reviews de novo claims of instructional error." *People Martin*, 271 Mich App 280, 337; 721 NW2d 815 (2006). "When reviewing a claim of instructional error, this Court views the instructions as a whole to determine whether the issues to be tried were adequately presented to the jury." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). This Court reviews for an abuse of discretion the trial court's decision regarding whether a specific jury instruction applies. *Id*.

"The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 N.W.2d 399 (2010). "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

A defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "Jury instructions must include all elements of the charged offenses" and cannot exclude "material issues, defenses, or theories that are supported by the evidence." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2 254 (2003). In relevant part, the trial court instructed the jury as follows:

> First, when he acted, the defendant must have honestly and reasonably believed that he had to use force to protect himself or others from the imminent, unlawful use of force by another. If his belief was honest and reasonable, he could act at once to defend himself or others, even if it turns out later that he was wrong about how much danger he was in.

> Second, a person is only justified in using the degree of force that seems necessary at the time to protect himself or others from danger. The defendant must have used the kind of force that was appropriate to the attack made and the circumstances as he saw them. When you decide whether the force used was what seemed necessary, you should consider whether the defendant knew about any other ways of protecting himself or others, but you may also consider how the excitement of the moment affected the choice the defendant made.

> Third, the right to defend oneself or another person only lasts as long as it seems necessary for the purpose of protection.

> Fourth, the person claiming self-defense must not have acted wrongfully and brought on the assault. However, if the defendant only used words, that does not prevent him from claiming self-defense if he was attacked.

> The defendant does not have to prove that he acted in self-defense. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense.

> A person can use force in self-defense only where it is necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed he needed to use force in self-defense.

> However, a person is never required to retreat if attacked in his own home, nor if the person reasonably believes that an attacker is about to use a deadly weapon, nor if the person is subject to a sudden, fierce, and violent attack.

> Further, a person is not required to retreat if he has—if he has not or is not engaged in the commission of a crime at the time the force is used, and has a legal right to be where he is at that time, and has an honest and reasonable belief that the use of force is necessary to prevent imminent great bodily harm of himself.

Defendant objects to the trial court's instruction that, "[i]f the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed he needed to use force in self-defense." Defendant contends that the trial

-6-

court should not have given this instruction because he had no duty to retreat. He states that he had a legal right to be in the victim's driveway, and that he did not commit a crime when he used force against the victim because he was acting in self-defense. Thus, defendant says that the "duty to retreat" portion of the jury instruction was misleading and infringed on his right to present his self-defense theory at trial.

In some cases, "an instruction permitting the jury to consider a defendant's failure to retreat would be improper; for instance, if the defendant was inside his dwelling when he was attacked or if the undisputed evidence established that he was suddenly and violently attacked." *People v Riddle*, 467 Mich 116, 141 n 30; 649 NW2d 30 (2002).[2] In those cases, "there would be no basis for an instruction allowing the defendant's failure to retreat to be considered in determining whether he acted in lawful self-defense." *Id*. However, in this case, whether defendant had a legal right to be in the victim's driveway and whether he acted in self-defense by running over the victim with his car were contested issues. "Thus, it was properly within the province of the jury to determine whether defendant honestly and reasonably believed that it was necessary to exercise deadly force." *Id*. Under the factual circumstances presented here, where defendant was not in his own home and where a question existed as to whether he could have reasonably retreated instead of striking the victim with his car, it was proper to allow the jury to consider whether he had a duty to retreat.

Defendant also argues that this case is analogous to *People v Crow*, 128 Mich App 477; 340 NW2d 838 (1983). There, the defendant picked up a hitchhiker, who subsequently attacked him while he was driving. *Id*. at 480. This Court opined that the defendant had no duty to retreat from his own vehicle. *Id*. at 488-489. Regarding jury instruction, the Court stated:

> [A]lthough the defendant was not entitled to an instruction informing the jury that, as a matter of law, he had no duty to retreat, we are equally satisfied that the prosecution was not entitled to an instruction to the jury that, as a matter of law, the defendant had a duty to retreat, given the circumstances of this case. [*Id*.]

Defendant likewise states that he had no duty to retreat from his vehicle when it was parked in the victim's driveway, and thus that the trial court erred by giving a jury instruction suggesting otherwise. Defendant ignores that in *Crow*, both the defendant and the assailant were inside the defendant's vehicle when the assailant attacked the defendant. *Id*. at 480. The defendant was consequently faced with the choice of retreating from his vehicle or defending himself against the attack. Here, defendant was inside his vehicle and the victim was outside of it. Unlike in *Crow*,

---

[2] In *People v Richardson*, 490 Mich 115, 122; 803 NW2d 302 (2011), our Supreme Court clarified that this passage from *Riddle* was obiter dictum because the *Riddle* defendant was not in his dwelling when he was attacked, meaning the footnote was not essential to *Riddle*'s holding. We recognize that "[o]biter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication." *People v Taylor*, 510 Mich 112, 137; 987 NW2d 132 (2022) (quotation marks and citation omitted). Even so, because defendant in this case was not in his dwelling when he allegedly acted in self-defense, and the parties disputed whether he had a duty to retreat, we find instructive the Supreme Court's discussion of scenarios where a duty-to-retreat instruction would be improper.

defendant was protected inside his car and had the ability to safely leave the area. Thus, defendant's reference to *Crow* is inapt, and fails to support his argument that the trial court erred by giving an instruction on the duty to retreat.

We next turn to whether defense counsel was ineffective for failing to object to the jury instructions. Defendant argues that defense counsel should have requested that the trial court instruct the jury that he had no duty to retreat because he had a legal right to be in the victim's driveway.

A defendant must move for a new trial or evidentiary hearing to preserve the claim that his or her counsel was ineffective. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Defendant failed to do so; thus, the issue is unpreserved, and our review is limited to mistakes apparent from the record. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003). To establish that the defendant received the ineffective assistance of counsel, first, the defendant must show that defense counsel's performance fell below an objective standard of reasonableness. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, the defendant must show that, "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012) (quotation marks and citation omitted).

As previously discussed, the facts of this case supported the trial court's decision to give a jury instruction on the duty to retreat; thus, defendant has not shown any error in the jury instructions. This Court will not impute error to defense counsel for the failure to object to jury instructions when the instructions have not been shown to be erroneous. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). We therefore conclude that defense counsel was not ineffective for failing to object to the instructions as given. Accordingly, defendant's claim of ineffective assistance must fail.

### D. OFFENSE VARIABLE 17

Defendant next argues that the trial court erred by assessing 10 points under offense variable (OV) 17, which concerns the use of a vehicle to commit a crime. We disagree.

This Court reviews for clear error the trial court's factual findings regarding the sentencing guidelines. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A preponderance of the evidence must support the court's findings. *Id*. This Court reviews de novo whether the facts of a case are sufficient to satisfy a statute's scoring conditions. *Id*.

The trial court scores OV 17 for crimes against a person if the offense involved the operation of a vehicle. MCL 777.22(1). Ten points are assessed under OV 17 if "[t]he offender showed a wanton or reckless disregard for the life or property of another person." MCL 777.47(1)(a). Wantonness is conduct that indicates that "the actor is aware of the risks but indifferent to the results." *People v Feezel*, 486 Mich 184, 196; 783 NW2d 67 (2010) (quotation marks and citation omitted). Reckless disregard exists when the conduct demonstrates "indifference to the rights of others that is equivalent to a criminal intent." *People v Schaefer*, 473 Mich 418, 438; 703 NW2d 774 (2005).

Defendant contends that he cannot be assessed points for negligent conduct because the crime for which he was convicted, AWIGBH, does not contain a negligence element.[3] To that end, defendant argues that his conduct could not be both "intentional" and "reckless" at the same time. However, defendant overlooks that OV 17 does not instruct the court to consider the elements of the offense, and merely instructs the court to consider the offender's actions. See MCL 777.47(1)(a). Nothing in the plain language of MCL 777.47(1)(a) precludes a court from assessing 10 points under OV 17 based on the defendant's conviction of AWIGBH, nor is there any indication that a defendant's conduct must exclusively be considered intentional *or* reckless. Here, defendant's act of accelerating a car directly at the victim and deliberately striking him demonstrated a profound indifference to the harm it might cause, regardless of whether defendant *intended* to harm or kill the victim. In other words, even though the jury found that defendant had a greater intent, a preponderance of the evidence still supported that defendant's conduct showed a willful or wanton disregard for the victim's life.

Defendant also argues that *People v Cano-Monarrez*, 505 Mich 984, 984; 937 NW2d 695 (2020), holds that OV 17 may not be scored when a defendant is convicted of AWIGBH because AWIGBH is a specific-intent crime. Defendant misconstrues the holding of that case, which simply accepted the prosecution's concession that OV 17 should not have been scored. An examination of the underlying facts indicates that the defendant had been convicted of assault with intent to commit murder, under which the trial court should score OV 6. See MCL 777.22(1). When points are assessed under OV 6, OV 17 cannot be scored. See MCL 777.47(2). This case does not support defendant's argument. Accordingly, defendant has failed to show that the trial court erred by assessing 10 points under OV 17 in this case.

## III. CONCLUSION

Defendant has not shown any errors warranting relief. Accordingly, we affirm.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Michelle M. Rick

---

[3] Defendant makes no argument as to his conviction of reckless driving, and focuses solely on his AWIGBH conviction.